UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CHARLES LEONARD,

    Plaintiff,

v.      Case No.:

FLOWERS FOODS, INC., and FLOWERS BAKING CO. OF MIAMI,

    Defendants.

**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

Plaintiff, CHARLES LEONARD (hereinafter "Plaintiff"), who was an employee of Defendants, FLOWERS FOODS, INC., FLOWERS BAKING CO. OF MIAMI, (hereinafter collectively "Defendants"), by and through the undersigned counsel brings this action for unpaid overtime compensation, declaratory relief, liquidated damages, attorneys' fees and costs and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA").

**INTRODUCTION**

1. This lawsuit seeks to recover overtime compensation for the Plaintiff, who worked for Defendants as a "**distributor,**" employed to deliver fresh baked goods to Defendants' customers.

2. Plaintiff alleges that he is entitled to, *inter alia*: (i) unpaid overtime wages for hours worked above forty (40) hours in a work week as required by law; (ii) liquidated damages; and (iii) other damages, pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq*.

1

## JURISDICTION

3. Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, *et seq.,* hereinafter referred to as the "FLSA") to recover unpaid overtime compensation, an additional and equal amount as liquidated damages, and reasonable attorney's fees and costs.

4. The jurisdiction of the Court over this controversy is proper pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under 29 U.S.C. § 216(b).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since all, and/or a substantial part, of the events giving rise to Plaintiff's claims occurred in Palm Beach County, Florida, located within the Southern District of Florida.

## PARTIES

6. During the relevant time period (2016-Present), Plaintiff Charles Leonard worked as a Flowers distributor in Palm Beach County, Florida.

7. Defendant, Flowers Foods, Inc., ("Flowers") is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757.

8. Plaintiff performed delivery and merchandizing services to local retailers of bakery and snack food products manufactured and/or sold by Flowers.

9. At all times relevant hereto, Plaintiff worked out of a distribution center located in Belle Glade, which was run by Flowers Baking Co. of Miami, LLC.

10. Plaintiff has worked for Defendants from approximately 1987 through the present.

11. Plaintiff regularly worked and continues to work over forty (40) hours per week.

12. Plaintiff typically works approximately sixty (60) hours per week and does not receive overtime premiums.

13. Plaintiff's primary job duty entails delivering products and merchandise to retailers of bakery and bread products sold by Defendants.

14. Plaintiff works out of a warehouse operated by Defendants and performs related activities at their place of business located in Miami-Dade County, Florida.

15. Plaintiff previously opted in a Plaintiff in the case of *Martins v. Flowers Foods, Inc.*, et al. on January 4, 2019, and the statute of limitations applicable to his instant claims was tolled as of that date.

16. Flowers Foods, Inc. hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves.

17. Prior to its current classification, Flowers Foods, Inc. previously classified the individuals employed to distribute its products as employees.

18. Notwithstanding its current purported classification of its distributors as independent contractors, Flowers Foods, Inc. still pays the vast majority of its distributors, including Plaintiff, as W-2 employees.

19. Flowers Foods, Inc. employs distributors in 31 states throughout the southern and eastern parts of the United States.

20. Flowers Foods, Inc. is a corporation which operates and conducts business in Miami-Dade County, Florida, and is therefore within the jurisdiction of this Court.

21. Flowers Baking Co. of Miami, LLC ("Flowers Miami") is a company which operates and conducts business within Palm Beach County, Florida and is therefore within the jurisdiction of this Court.

22. Flowers Miami is a wholly owned subsidiary of Flowers Foods, Inc.

23. Flowers Miami hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Miami, Florida distribution center.

24. All of Flowers Foods Inc.'s services are provided through its wholly-owned subsidiaries, including, Flowers Miami.

25. Other wholly-owned subsidiaries of Flowers Foods, Inc. include:

26. These subsidiaries include:

   a. Flowers Foods Specialty Group, LLC; (GA)

   b. Flowers Foods, Inc.; (GA)

   c. Flowers Baking Co. of Miami, LLC; (FL)

   d. Flowers Baking Co. of Thomasville, LLC; (GA)

   e. Flowers Baking Co.; (GA)

   f. Flowers Baking Co. of Bradenton, Inc.; (FL)

   g. Flowers Baking Co. of Florida, LLC; (FL)

   h. Flowers Baking Co. of Jacksonville, LLC; (FL)

   i. Flowers Baking Co. of Orlando, LLC. (FL)

      j.      Flowers Baking Co. of Tucker, LLC, (GA)

      k.      Flowers Baking Co. of Mcdonough, LLC, (GA)

      l.      Flowers Food Specialty Group, LLC, (GA)

      m.      Flowers Bakery of Atlanta, LLC, (GA)

      n.      Flowers Frozen Desserts, LLC, (GA)

      o.      Dan-Co Bakery, LLC, (GA)

      p.      Table Pride, LLC, (GA)

      q.      Flowers Foods Bakeries Group, LLC, (GA)

      r.      Flowers Food Specialty Sales, LLC, (GA)

      s.      Flowers Bakery of Suwanee, LLC, (GA)

      t.      Flowers Foil Company, LLC, (GA) and

      u.      Flowers Frozen Desserts Sales Support Group,   LLC (GA).

27. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami operated, and continue to operate, as one "joint enterprise," within the meaning of the FLSA.

28. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami operated, and continue to operate, as an "integrated enterprise," within the meaning of the FLSA.

29. At all times material hereto, Flowers Foods, Inc. and Flowers Miami were and are Plaintiff's "joint employers" within the meaning of the FLSA.

30. At all times material hereto, Flowers Foods, Inc. operated Flowers Miami.

31. At all times material hereto, Flowers Foods, Inc. co-mingled the assets of Flowers Miami together and reported the earnings of same collectively.

32. At all times material hereto, Flowers Foods Inc. funded Flowers Miami from a common fund used to fund other wholly owned subsidiaries.

33. At all times material hereto, Flowers Foods, Inc. jointly employed the same employees, in the same or similar role, simultaneously as one joint enterprise.

34. At all times material hereto, Flowers Foods, Inc. and Flowers Miami maintained their principle place of business at 17800 NW Miami Ct, Miami, FL 33169.

35. At all times material hereto, Flowers Foods, Inc. and Flowers Miami had common personnel in departments such as IT, accounting, human resources, and marketing.

36. At all times material hereto, Flowers Foods, Inc. and Flowers Miami had common senior officers and/or management.

37. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami shared one common internet domain; http://www.flowersfoods.com.

38. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami shared common corporate offices.

39. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami shared a common telephone number for their corporate offices.

40. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami shared a common mailing address for their corporate offices.

41. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami shared a common business purpose in they jointly existed to sell and distribute wholesale baked goods to their retail customers in Florida and Georgia.

42. At all times relevant hereto, Flowers Foods, Inc. and Flowers Miami engaged in related operations.

43. At all times relevant hereto, Flowers Foods, Inc. issued and determined its policies under the FLSA uniformly for all of its subsidiaries including Flowers Miami.

44. At all times relevant hereto, Flowers Food, Inc. classified all of its distributors as independent contractors for all of its subsidiaries including Flowers Miami.

45. At all times relevant hereto, Flowers Foods, Inc. decided not to pay overtime to its distributors at all of if aforementioned subsidiaries including Flowers Miami.

46. After being sued by many distributors, Flowers Foods, Inc. decided to offer current distributors at all of its subsidiaries money to sign an agreement that included an arbitration clause.

47. Flowers Foods, Inc. was and continues to be Plaintiff's "employer" within the meaning of FLSA.

48. Flowers Foods, Inc. and Flowers Miami were, and continue to be Plaintiff's "joint employer" within the meaning of the FLSA.

## COVERAGE

49. At all material times (2016-Present), Defendants were enterprises subject to the FLSA's provision on overtime wages.

50. At all material times, Defendants were enterprises subject to and failed to comply with 29 U.S.C. §§201-209.

51. At all material times, Defendants were an enterprise engaged in commerce or in the production of goods for commerce, in that said enterprises had at least two (2) employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

52. Defendants' employees handled such goods as commercial equipment, baking products, tables, chairs, crates, which previously moved commerce on a daily basis.

53. At all material times (2016-Present), each Defendant had an annual gross volume of sales or business done of not less than $500,000, exclusive of excise taxes at the retail level which are separately stated.

54. At all material times (2016-Present), the Defendants jointly had an annual gross volume of sales or business doe of not less than $500,000, exclusive of excise taxes at the retail level.

## FACTS

55. Defendant, Flowers Foods, Inc. is a corporation whose business consists of manufacturing, selling and distributing bakery and snack food products to retail customers.

56. Flowers Foods, Inc. uses a centralized network of communication, distribution, and warehousing facilities integrating Plaintiff into an existing network of operations throughout Florida and Georgia.

57. Defendant Flowers Foods, Inc., by and through its affiliates and subsidiaries, bakes and sells locally bread and bread products through local warehouses.

58. Distributors, such as Plaintiff, arrive at local warehouses each morning and load their vehicles with Defendants' products.

59. Distributors load, and then deliver, the product from Defendants' local warehouses to local retailers—customers at the time and place specified by Defendants.

60. The distribution agreement between Defendants and their distributors has no specific end date and can be terminated by either party at any time with limited notice.

61. Defendant Flowers Foods, Inc. markets its bakery and snack products to grocery stores, convenience stores and other merchants.

62. Defendant Flowers Foods negotiates directly with the retailers to set virtually all terms of the relationship including:

    a. wholesale and retail prices for products;

    b. service and delivery agreements;

    c. shelf space to display products;

      d.      product selection;

      e.      promotional pricing for products;

      f.      the right to display promotional materials;

      g.      print advertisements in retailers' newspapers; and

      h.      virtually every other term of the arrangement.

63. In most cases, Flowers Foods, Inc. directly negotiates and agrees with retailers and fast food restaurants to locally manufacture and distribute the local retailer's store brand (or private label) bread products.

64. Defendant Flowers Foods, Inc. often negotiates the above terms for fresh baked bread and bread products (which are distributed by distributors) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by distributors).

65. The result is that distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.

66. Plaintiff does not directly increase sales or customers in any meaningful way, or contract directly with customers, is not compensated with bonuses for new customers or increased sales, and is not required to attend sales training or conferences.

67. Defendants employ other (non-distributor) workers whose primary duty is to make sales to Defendants' institutional and "national" customers.

68. Plaintiff must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

69. Plaintiff is required to use Defendants' hand-held computer to log deliveries, and Defendants bill their customers using the data entered into the computer by Plaintiff.

70. The terms of the sale are negotiated directly between Defendants and its retailer-customer.

71. Plaintiff places Defendants' products on the retailer-customer's shelves, removes stale or rejected product, and organize the retailer-customer's display shelf.

72. If Defendants are running a sale or promotion, Defendants require Plaintiff to construct and stock the promotional display.

73. Defendants usually reimburse Plaintiff for stale or rejected product.

74. Defendants represented to Plaintiff that he would run his business independently, have the discretion to use his business judgment, and have the ability to manage his business to increase profitability.

75. Contrary to their representations, Defendants denied Plaintiff benefits of ownership and entrepreneurial skill by retaining and exercising rights including:

    a. the right to negotiate the wholesale price for the purchase and sale of products;

    b. the right to negotiate shelf space in the stores in Plaintiff's territory;

    c. the right to negotiate the retail sale price for products;

    d. the right to establish all sales and promotions and to require Plaintiff to follow them;

  e. the right to change orders placed by Plaintiff, to require him to pay for product he did not order, load it on his trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; if Plaintiff did not attempt to distribute the extra product, he was billed for the full wholesale price of that product;

  f. the right to assign delivery stops to Plaintiff in a particular order and require Plaintiff to get approval for following a different order;

  g. the right to discipline Plaintiff, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

  h. the right to handle customer complaints against the Plaintiff and to take disciplinary action;

  i. the right to withhold pay for certain specified expenses;

  j. the right to unilaterally terminate the employment relationship;

  k. the right to unilaterally vary the standards, guidelines, and operating procedures; and

  l. various other rights reserved by Defendants.

76. Plaintiff was and is required to accept Defendants' continually updated conditions of employment or face termination.

77. Defendants not only retained the rights listed above, but they exercised the rights as well.

78. Defendants also routinely modify Plaintiff's product orders to increase the amount of the order.

79. If Plaintiff refuses the additional product, Defendants bills Plaintiff for the product, and deducts the cost from Plaintiff's wages.

80. Defendants required Plaintiff to process all transactions through a hand held computer it provided to him.

81. The hand held computer pre-determines the product prices, maintains customer information, tracks mileage, and monitors business performance.

82. Defendants control the Plaintiff's opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing.

83. Specifically, Defendants negotiate the sale of their products with major retailers.

84. Plaintiff then delivers the products to store locations on the terms agreed to between Defendants and the retailer.

85. Plaintiff lacks discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion that would allow him to increase (or decrease) the profitability of his work.

86. Plaintiff's investment in equipment to operate his route is relatively low.

87. Plaintiff uses a box truck and his personal vehicle to transport Flowers products to retailers.

88. Apart from the purchase or lease of the box truck, there is no other investment necessary because Defendants provide computer equipment, administrative

support, warehouse space, advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity.

89. Defendants even arrange for insurance and vehicle financing on behalf of Plaintiff and the other distributors; Plaintiff paid for the insurance through wage deductions.

90. The distribution job performed by Plaintiff does not require specialized skills.

91. Since Plaintiff was misclassified as a non-employee, Plaintiff was denied the rights and benefits of employment, including, but not limited to, overtime premium wages.

92. Plaintiff has incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendants have required him to purchase or pay, or that are necessary for their work.

93. Plaintiff works more than forty (40) hours during virtually every seven-day workweek.

94. However, Plaintiff does not receive overtime premium wages.

### COUNT I - RECOVERY OF OVERTIME COMPENSATION AGAINST DEFENDANTS

95. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-94 above.

96. Plaintiff is entitled to be paid time and one-half of his regular rate of pay for each hour worked in excess of forty (40) per work week.

97. During his employment with Defendants, Plaintiff regularly worked and continues to work overtime hours but is not paid time and one half compensation for same.

98. As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiff time and one half of his regular rate of pay for each hour worked in excess of forty (40) per work week in one or more work weeks, Plaintiff has suffered, and continues to suffer, damages plus incurring reasonable attorneys' fees and costs.

99. As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a. The payment of all overtime hours at one and one-half the regular rate of pay for the hours worked by Plaintiff for which Defendants did not properly compensate him;

b. Liquidated damages;

c. Reasonable attorneys' fees and costs incurred in this action;

d. A declaration that Plaintiff was an employee of Defendants under the terms of the FLSA and not independent contractors.

e. Pre- and post-judgment interest as provided by law;

f. Trial by jury on all issues so triable;

g. Any further relief that this Court determines to be just are appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this 21st day of April, 2020.

Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
Florida Bar No. 27777
Chanelle J. Ventura
Florida Bar No. 1002876
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
E-mail: AFrisch@forthepeople.com
E-mail: cventura@forthepeople.com

*Attorneys for Plaintiff*